UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Nickie Kane,

        Plaintiff,

–v–

St. Raymond's Roman Catholic Church, *et al.*,

        Defendants.

14-cv-7028 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff Nickie Kane, proceeding *pro se*, filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, alleging that Defendants discriminated against her on the basis of her sex, race, color, national origin, and age, and engaged in unlawful retaliation. Two motions are currently before the Court: Defendants' motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 8, and Plaintiff's motion to remand this action to state court, Dkt. No. 14. For the following reasons, Plaintiff's motion to remand is DENIED, and Defendants' motion to dismiss is GRANTED.

    I.    **Background**

    **A.  Factual Background**

    For the purpose of evaluating this motion to dismiss, all plausible allegations in the Amended Complaint are accepted as true, and all reasonable inferences are drawn in Plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

    Defendant St. Raymond's Roman Catholic Church[1] ("St. Raymond's") hired Plaintiff to the position of afterschool counselor in September 2012. Am. Compl. ¶ 3. According to

---

[1] Plaintiff inadvertently identified Defendant as "Roman Catholic Church of St. Raymond" in the Amended Complaint. The Clerk is requested to amend the caption to conform to the above.

Plaintiff, at some point during her employment, she "became the object of" Defendant Bickart's "infatuation," and when Plaintiff did not share Defendant Bickart's interest, Bickart retaliated against her. (Bickart's position at St. Raymond's is unknown, as Plaintiff has not alleged the positions held by any of the individual defendants in this case.) Am. Compl. ¶ 6. Specifically, Plaintiff points to three incidents where Bickart "kicked sports equipment so hard that it nearly missed [sic] hitting [Plaintiff] in the face," explaining that on the third incident, the equipment was kicked with enough force that when it missed Plaintiff and hit a child in the head, the child was "visibly dazed." Am. Compl. ¶ 7. On another occasion, Bickart told Plaintiff that he lost tax forms that she had filled out when she started employment, and sat so close to her on a bench that she became physically uncomfortable. Am. Compl. ¶ 8. Plaintiff alleges that Bickart often stood too close to her, and approached her in a way that made her uncomfortable. Am. Compl. ¶ 9. Plaintiff alleges that toward the end of the school year, Bickart stopped giving Plaintiff her paychecks, forcing Plaintiff to ask Defendant Alamo for them. Am. Compl. ¶ 11. Then, in June of that year, Plaintiff states that Bickart banged loudly on the door while she was using the restroom, and when Plaintiff allowed Bickart in, he walked in and reached for a paper towel without letting Plaintiff out. Am. Compl. ¶ 12. This made Plaintiff uncomfortable, as it brought the two into extremely close proximity. Am. Compl. ¶ 12. On the last day of school, Plaintiff shared a handshake with Bickart, but Bickart "held on to her hand for so long that she felt the need to yank her hand away." Am. Compl. ¶ 14(a).

Plaintiff's allegations of mistreatment extend beyond Bickart. She states that at some point during her employment with Defendant, Plaintiff changed the account to which her direct deposit checks were sent. Am. Compl. ¶ 10. When Plaintiff called the payroll clerk after a week without a response, the clerk told her that she had called and tried to reach Plaintiff several times, but none of the messages were relayed to Plaintiff. Am. Compl. ¶ 10. A separate incident arose after Plaintiff complained to Defendants Bickart and Alamo that a high school student under Plaintiff's care had refused to follow her directions; Alamo said to Plaintiff, "I don't care about you," and then "stormed off." Am. Compl. ¶ 13. Plaintiff further alleges that she was only once

2

asked to come in early on half days when other after-school staff members would start work early. Am. Compl. ¶ 15.

Plaintiff states that the staff at St. Raymond's is mostly "Latino/Hispanic," a fact she attributes to the school's decision to hire primarily through word of mouth. Am. Compl. ¶ 16. Plaintiff states that at one point she overheard Bickart and Alamo discussing Plaintiff's race, and Bickart told Alamo that Plaintiff is "Indian." Am. Compl. ¶ 16. On a separate occasion, Plaintiff alleges that a staff member named Carlos asked the only two Indian children at the school if they were Catholic, and when they responded that they were not, the staff member asked them why they were there, causing one child to become hysterical. Am. Compl. ¶ 16(a).

On the final day of the school year, Bickart and Alamo told Kane that they would contact her in August about the next school year. Am. Compl. ¶ 17. Kane called Alamo in August to find out her start date, and Alamo stated that she was waiting for Defendant Scanlon to tell her the dates. Am. Compl. ¶ 17. However, Plaintiff was not contacted before school started. Am. Compl. ¶ 18. After an initial call with Defendant Scanlon, wherein Scanlon told Plaintiff that he would speak with his colleagues, Scanlon did not take any more of Plaintiff's calls or return her messages. Am. Compl. ¶ 18. Plaintiff called Defendants Brito and Graham but also did not receive a response, and eventually contacted Defendant Carotenuto, who "acted as the liaison between Ms. Kane and St. Raymond." Am. Compl. ¶ 18. However, despite Carotenuto's intervention, Plaintiff states that she "was ultimately unable to get any resolution." Am. Compl. ¶ 18. Plaintiff began to look for other jobs, but discovered that St. Raymond's and Bickart were not verifying her employment history for prospective employers. Am. Compl. ¶ 19.

Plaintiff states that she is an Asian woman with "tan or brown skin," and was born in Guyana. Am. Compl. ¶ 20. At the time of the events underlying the Complaint, Plaintiff was 34 years old. Am. Compl. ¶ 20. She states that she was a college student during her employment with Defendants, but was older than the other college students working in the same position for Defendants. Am. Compl. ¶ 13.

B. Procedural Background

3

Plaintiff filed this action in the Supreme Court of the State of New York for New York County on May 29, 2014. Dkt. No. 1-1 at 6. On August 29, 2014, after Plaintiff had mailed the Summons and Complaint to Defendants but before any Defendant other than St. Raymond's had executed and mailed an acknowledgment that they received the summons, St. Raymond's filed a notice of removal to this Court, asserting that this Court had federal-question jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1. On September 9, 2014, Plaintiff filed the Amended Complaint in this Court, dropping her claims under New York law and asserting claims only under Title VII and the ADEA. Dkt. No. 5. This Court ordered service of the Amended Complaint on September 19, 2014, Dkt. No. 7, and Magistrate Judge Netburn granted Plaintiff leave to proceed *in forma pauperis* on January 22, 2015, Dkt. No. 27.

Defendants filed their motion to dismiss the Amended Complaint on September 23, 2014. Dkt. No. 8. Plaintiff filed her remand motion on October 10, 2014. Dkt. No. 14. Both motions are now fully briefed.

**II.    Motion To Remand**

Although it was filed after Defendant's motion to dismiss, the Court will deal first with Plaintiff's motion to remand. As an initial matter, removal was proper at the time Defendants filed their notice of removal. Under 28 U.S.C. § 1441(a), a defendant may remove any civil action brought in state court over which the federal courts could have had original jurisdiction. Plaintiff's original state-court complaint alleged claims under the Civil Rights Act of 1964 and the Civil Rights Act of 1991, which would have allowed the federal courts to take original jurisdiction under the federal-question jurisdiction statute, 28 U.S.C. § 1331.

Plaintiff raises two arguments as to why this should not be the case. First, she states that she filed a motion to amend her state-court complaint to remove all federal claims and proceed only under New York law. Though Plaintiff does not allege the timing of this motion, the motion itself—which is titled as an order to show cause—is dated September 16, 2014, meaning it was filed after Defendants' notice of removal, which was filed on August 29, 2014. *See* Mistretta Decl. Ex. G (Dkt. No. 19-7) (Plaintiff's order to show cause why she should not be

4

permitted to amend complaint). Under 28 U.S.C. § 1446(d), all state-court proceedings must cease once a notice of removal has been filed, unless and until the action is remanded to the state court. This provision prevents the state court from acting on Plaintiff's order to show cause, and renders void any action that the state court may have taken on the order. *See N.Y. State Nat'l Org. for Women v. Terry*, 697 F. Supp. 1324, 1330 n.5 (S.D.N.Y. 1988) (citing *United States ex rel. Echevarria v. Silberglitt*, 441 F.2d 225, 227 (2d Cir. 1971)). Accordingly, any action Plaintiff may have taken to amend the complaint in state court is a nullity, without effect on the case or its removability. To the extent that Plaintiff suggests the action must be remanded *for the purpose* of her entering an amended complaint in state court, *see* Dkt. No. 15 at ¶ 6, her argument is foreclosed by 28 U.S.C. § 1441, which gives Defendants the *right* to remove an action over which the federal courts could have had original jurisdiction. *See Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 356 (2d Cir. 1995) (describing right to remove). It is not discretionary, and the Court cannot remand a case that has otherwise been appropriately removed.

Furthermore, Plaintiff filed an Amended Complaint in this Court on September 9, 2014, in which she brought an additional claim under the ADEA, and excised all of her claims under state law. *See* Dkt. No. 5. Plaintiff's Amended Complaint thus exclusively alleges federal claims, and leaves no doubt that the Court has jurisdiction under 28 U.S.C. § 1331. And although it is not necessary to the Court's decision because removal was proper from the initial filing of the notice of removal, the Court notes that Plaintiff waived any objection to removal by filing an amended complaint that alleged federal claims after this case was removed. *See Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996).

Plaintiff has also suggested that Defendants did not follow proper removal procedure because the notice of removal is signed only by St. Raymond's, and omits the signatures of any individual defendants or their counsel. *See* Dkt. No. 15 at ¶ 7. Plaintiff is correct that when, as here, an action is removable solely under 28 U.S.C. § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C.

5

§ 1446(b)(2)(A). However, at the time that St. Raymond filed for removal, it was the only defendant who had been served (and it continues to be the only Defendant who has been served in this action). *See* Mistretta Decl. ¶¶ 11-12 (Dkt. No. 19). It was therefore the only defendant whose consent was required to file the notice of removal. *See Ragusa v. Rain Bird Corp.*, No. 14-cv-3772 (GHW), 2014 WL 4277646, at *1 (S.D.N.Y. Aug. 29, 2014) (explaining that there is a well-established exception to unanimity rule when non-joining defendants have not been served before notice of removal is filed). Moreover, even if Plaintiff's § 1446(b)(2)(A) argument were meritorious—and, again, it is not—her motion to remand based on a procedural defect was untimely, as any such motion must be made within 30 days of the notice of removal. 28 U.S.C. § 1447(c). Plaintiff's remand motion was made on October 10, 2014, *see* Dkt. No. 14, which is 42 days after Defendants filed their notice of removal and 36 days after it was served on Plaintiff by overnight mail, *see* Dkt. Nos. 1 & 4. Plaintiff's motion to remand is therefore denied.

### III.    Motion to Dismiss

The Court now turns to Defendants' motion to dismiss. To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To do so, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements that a defendant is liable on a plaintiff's claims are not sufficient, and a court need not accept the truth of "a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

A *pro se* plaintiff is held to a less stringent standard than a trained lawyer in drafting a complaint, and courts will liberally construe the allegations in a complaint filed *pro se. Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Allegations of civil rights violations in particular are subject to liberal construction. *Ahlers*, 684 F.3d at 60 (citing *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)). Even so, a *pro se* plaintiff is not exempt from the requirement to state sufficient factual matter that,

after all inferences are drawn in her favor, raises a right to relief "above the speculative level." *Twombly*, 550 U.S. at 555.

## A. ADEA

Plaintiff's allegations affirmatively demonstrate that her claim under the Age Discrimination in Employment Act must be dismissed. By its very terms, the ADEA applies only to individuals "who are at least 40 years of age." 29 U.S.C. § 631(a); *see D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) ("The ADEA prohibits discrimination in employment on the basis of age against persons aged 40 or older."). Plaintiff alleges that she is 34 years old. Am. Compl. ¶ 20. The ADEA therefore cannot apply to her, and her claim under that statute is dismissed with prejudice.

## B. Title VII

In addition to her ADEA claim, Plaintiff has raised claims of sex, race, color, and national origin discrimination under Title VII. These claims are deficient in a number of ways.

### 1. Exhaustion

As a precondition to bringing suit under Title VII, a plaintiff is required to exhaust administrative remedies. *See* 42 U.S.C. § 2000e-5(f)(1); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Though exhaustion is not a jurisdictional requirement, it is an "essential element" of a Title VII claim. *Francis*, 235 F.3d at 768. To successfully exhaust administrative remedies, a plaintiff must both file a timely charge with the Equal Employment Opportunity Commission (EEOC), and timely bring suit after the EEOC has provided plaintiff with a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(f)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). Despite the liberal construction given to Title VII's procedural requirements in light of its remedial purpose, the filing of a *timely* EEOC charge is a "necessary prerequisite to a Title VII action" in federal court. *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 105 (2d Cir. 1978); *see also Baroor v. N.Y.C. Dep't of Ed.*, 362 F. App'x 157, 159 (2d Cir. 2010); *Amin v. Akzo Nobel Chems., Inc.*, 282 F. App'x 958, 960 (2d Cir. 2008). Defendants bear the burden of proving a failure to exhaust (including the failure to timely file an EEOC charge), so a court will

7

not usually dismiss a claim for failure to timely file an EEOC charge unless such failure is apparent from the face of the complaint. *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 456 (S.D.N.Y. 2014) (collecting cases).

Plaintiff does not state on the face of the Amended Complaint that she filed a charge with the EEOC, nor is a right-to-sue letter attached to the pleading. In response to the motion to dismiss, Plaintiff submitted an EEOC intake questionnaire, which was stamped "received" by the EEOC on October 14, 2014. Dkt. No. 17 Ex. C. Beyond merely failing to allege exhaustion, then, Plaintiff has submitted documentation that indicates that she did not exhaust administrative remedies before bringing suit; her lawsuit was initiated, removed, and the motion to dismiss was filed before the "received" date of the intake questionnaire.

Moreover, to be timely, an EEOC charge must be brought within 180 days of the alleged unlawful employment practice, or 300 days if proceedings are initially instituted with a state authority that could grant relief for unlawful employment practices. 42 U.S.C. § 2000e-5(e)(1). Based on Plaintiff's complaint, her employment relationship with Defendants terminated around the beginning of the 2013-14 school year, which would be somewhere between August and October 2013. Even applying the more generous 300-day period despite the absence of an allegation that Plaintiff sought relief from a state agency, an EEOC charge filed on October 14, 2014 would be untimely for any events occurring before December 18, 2013.

Accordingly, the Amended Complaint and the documents that Plaintiff has provided show on their face that Plaintiff has not administratively exhausted her claims. Because exhaustion is an essential element of a Title VII claim, such a showing requires the Court to grant Defendants' motion to dismiss.

**2. Substantive Allegations**

Although it is not necessary to the Court's resolution of the case, the Court also concludes that Plaintiff has not stated a claim on which relief can be granted even if her claims were administratively exhausted. To state a claim under Title VII's antidiscrimination provisions, a plaintiff must plead facts that, if true, lead to a plausible inference that the plaintiff

8

suffered an adverse employment action because she possesses the protected characteristic alleged in the lawsuit—here, her race, color, national origin, or sex. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's ... protected characteristic."). To constitute an adverse employment action for the purposes of Title VII, the action taken against a plaintiff must have caused a "materially adverse change in the terms and conditions of employment." *Patane*, 508 F.3d at 112 (quoting *Fairbrother v. Morrison*, 412 F.3d 39, 56 (2d Cir. 2005), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). Examples include termination, a demotion accompanied by decreased wages or salary, a "material loss of benefits," and "significantly diminished material responsibilities," although other actions unique to an employee's situation may also qualify. *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

   Plaintiff has alleged, at most, one adverse employment action for the purposes of stating a claim of unlawful discrimination: Defendant St. Raymond's failure to rehire her at the beginning of the 2013-14 school year. The other "adverse" actions that Plaintiff alleges—not passing messages to her regarding her direct deposit, Am. Compl. ¶ 10, failing to provide her with paychecks for an undetermined amount of time, Am. Compl. ¶ 11, and not asking her to come in to work extra time, Am. Compl. ¶ 15—do not rise to the level of materially adverse actions. None of these allegations constitutes a change in the terms and conditions of her employment. Meanwhile, Plaintiff's allegation that Defendants did not verify her employment to other potential employers does not show a change in her employment relationship with St. Raymond's, but could underlie a retaliation claim because it interfered with her future employment prospects. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

9

Plaintiff's allegation that she lost her position with the aftercare program, however, plausibly states that she suffered an adverse employment action. While the only fair inference from Plaintiff's complaint is that she was hired for a single-year term and did not have a contract for the 2013-24 school year, *see* Am. Compl. ¶ 17 (Plaintiff alleges that she would be informed about employment for next school year by August), a failure to rehire can still be actionable if the decision not to rehire was made for impermissible reasons. Defendants have cited *Brown v. Nassau County*, No. 10-cv-5062 (JS) (AKT), 2011 WL 6754092, at *3 (E.D.N.Y. Dec. 22, 2011), for the proposition that an employee hired for a fixed term who does not have a "reasonable expectation of rehire" has not suffered an adverse employment action under Title VII. Def. Mem. at 9 (Dkt. No. 10). However, refusal to hire on the basis of membership in a protected class is actionable under Title VII, *see* 42 U.S.C. § 2000e-2(a)(1), and an employee does not *lose* Title VII's protection at the hiring phase of the employment relationship simply because she has worked for the employer before. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 500-01 (2d Cir. 2009), *superseded by statute on other grounds by* N.Y.C. Local L. No. 85 ("An employee seeking a renewal of an employment contract, just like a new applicant or a rehire after a layoff, suffers an adverse employment action when an employment opportunity is denied and is protected from discrimination in connection with such decisions under Title VII and the ADEA."). The mere fact that an employer has discretion whether to rehire does not grant it discretion whether to rehire based on an impermissible consideration, such as race or sex. *Id.* at 501.

However, Plaintiff has alleged no facts that tend to demonstrate that Defendants failed to rehire her on the basis of her race, color, sex, or national origin. Beyond her basic allegations that she is Asian, has "tan or brown skin," and was born in Guyana, Am. Compl. ¶ 20, Plaintiff's only allegation touching on race or national origin is that most of the employees at St. Raymond's are Hispanic, and Plaintiff once heard Bickart tell Alamo that "she [Plaintiff] is Indian." Am. Compl. ¶ 16. Whether cast as a comment on Plaintiff's national origin or as an attempt to characterize Plaintiff's race or color by a mistaken reference to Plaintiff's origin (as

Plaintiff alleges that she is not, in fact, from India), Plaintiff's allegations do not connect this isolated comment to Defendants' decision not to rehire her, or to any negative treatment of Plaintiff at all. Plaintiff further relates allegations that a staff member who is not named as a defendant upset two "Indian children" by asking them if they were Catholic, this allegation has no bearing on Defendants' treatment of Plaintiff, nor does it in any way connect to a decision about Plaintiff's employment. Such unconnected allegations that Plaintiff 1) had protected characteristics and 2) was not rehired do not permit a plausible inference that Plaintiff suffered an adverse employment action because of her race, color, or national origin, and do not raise Plaintiff's right to relief above a speculative level even when liberally construed.

 Moreover, although it is not a strict requirement that a Plaintiff plead a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), the Court notes that Plaintiff's allegations do not demonstrate such a case. To make a *prima facie* case of discrimination, a Plaintiff must show "(i) that [s]he belongs to a racial minority [or had a protected characteristic]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er] qualifications, [s]he was rejected; and (iv) that, after h[er] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802. While Plaintiff's allegations about her sex, race, color, and national origin are adequate to meet the first part of this test, she has raised no allegations about her qualifications for the position, nor her performance in the position while she held it, even when the Amended Complaint is read liberally. She further raises no allegations that her position continued to exist or that Defendants continued to seek other applicants when they failed to rehire her, and that any other applicants had the same qualifications that she had.

 Plaintiff's allegations of sex discrimination, meanwhile, appear to implicate a hostile work environment theory of liability based on sexual harassment. *See* Am. Compl. ¶ 5. To state a hostile work environment claim under Title VII, a complaint must contain facts that plausibly allege both that the harassment that the plaintiff was suffered was severe or pervasive enough to

11

"alter the conditions of the victim's employment and create an abusive working environment," and that there is a reason to impute the alleged misconduct to the Plaintiff's employer. *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). The conduct complained of must be more than episodic unless it is "very serious," and isolated acts usually will not be severe enough to create changes in the terms of a plaintiff's employment. *Alfano*, 294 F.3d at 374 (citing *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)). Plaintiff has not raised plausible allegations that Defendant Bickart's conduct was pervasive or severe enough to meet this threshold. She has alleged the following incidents involving Defendant Bickart: three occasions where Bickart kicked sports equipment so hard that it nearly hit her in the face, Am. Compl. ¶ 7, his sitting too close to her once on a cafeteria bench, Am. Compl. ¶ 8, standing too close to her, Am. Compl. ¶ 9, his failure to give Plaintiff her paychecks "[t]owards the end of the school year," Am. Compl. ¶ 11, and an occasion when he rushed into the restroom to obtain a paper towel when Plaintiff was inside, Am. Compl. ¶ 12. None of these incidents is sufficiently severe on its own to demonstrate plausibly a change in the terms of Plaintiff's employment, nor does Plaintiff allege that any single incident had such an effect on her. *Cf. Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (demonstrating the type of single incident that may be sufficiently severe, such as when a co-worker makes a loud, lengthy, and obscene tirade around many of plaintiff's colleagues and states that she gained her position because of sexual favors). Across the course of her year of employment, the matters Plaintiff has pleaded do not state plausible allegations that Plaintiff suffered more than episodic and isolated mistreatment or discomfort. *Cf. Raspardo v. Carlone*, 770 F.3d 97, 118 (2d Cir. 2014) (explaining that episodic incidents spread out over the course of a year generally do not state a claim).

Plaintiff has also failed to raise any plausible allegations that her employer should have been aware of any of Bickart's alleged behavior. To show that liability for a hostile work environment should be imputed to an employer, a Plaintiff must demonstrate "that a supervisor

12

used his or her authority to further the creation of a discriminatorily abusive working environment, or that the employer knew or reasonably should have known about harassment by non-supervisory co-workers, yet failed to take appropriate remedial action[.]" *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (internal quotation marks and citation omitted). Plaintiff has not pleaded any facts that would tend to show that anyone other than she and Bickart would have been aware of Bickart's conduct. Here the lone allegation that "management encouraged and condoned" her mistreatment involved an occasion when a student refused to follow Plaintiff's directions, and Defendant Alamo, upon being told, said that she did not care about Plaintiff. Am. Compl. ¶ 13. This allegation has no plausible relationship to Bickart's behavior, and is not sufficient to demonstrate that anyone else at St. Raymond's was aware of it.

Finally, to the extent Plaintiff also pleads a claim for retaliation, she must plead facts "that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115 (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)). A plaintiff has engaged in "protected activity" under Title VII when she "has opposed any practice made an unlawful employment practice" by Title VII, or has "participated in any manner in an investigation, proceeding, or hearing" under Title VII. *McMenemy v. City of Rochester*, 241 F.3d 279, 283 (2d Cir. 2001) (emphasis omitted) (quoting 42 U.S.C. § 2000e-3(a)). Here, Plaintiff has not alleged that she engaged in any protected activity under Title VII, or opposed Defendants' employment practices in any way, before she filed this lawsuit.

For all of these reasons, Plaintiff has failed to raise plausible allegations sufficient to state a claim under Title VII, whether for discrimination based on sex, race, color, or national origin or for retaliation, even when her Amended Complaint is construed liberally.

**IV.   Conclusion**

For the foregoing reasons, Plaintiff's motion to remand is DENIED. Defendants' motion to dismiss under Rule 12(b)(6) is GRANTED, and the Complaint is dismissed. This resolves Docket Nos. 8 & 14, and the Clerk is requested to terminate the case. The Court further finds pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and that *in forma pauperis* status is therefore denied. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: July 13, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge